In re Adoption of Burdette : Gills, an Infant, Appellant, *v.* Burdette et al., Appellees.

(No. 3945—Decided August 4, 1948.)

*Mr. Carl M. Myers,* for appellant.
*Messrs. Herberich, Rowley & Taylor,* for appellees.

Hunsicker, J. This is an appeal on questions of law from the Probate Court of Summit county.

Norma Gills, a minor unwed mother, was delivered of a girl child on August 15, 1947, in the Peoples Hospital of Akron, Ohio.

On August 16, 1947, Norma and her father, Homer Gills, signed and acknowledged an answer and consent to adoption. The witnesses to the acknowledgment were Geo. A. Palmer, the attending physician, John

G. Rowley, attorney for the petitioners to adopt, and Mrs. O. H. Gills, wife of Homer and mother of Norma. Norma and her father then signed a waiver of notice as to "all future hearings relative to the aforesaid adoption matter."

On August 20, 1947, Donald Allen Burdette and Thelma Mae Burdette, husband and wife, filed in the Probate Court a petition for adoption of Norma's daughter, the answer and consent of Norma and her father, together with the waiver which Norma and Homer Gills had signed. At the same time a journal entry, approved by the court, was filed, appointing a next friend and setting September 23, 1947, as the date for a hearing on the petition.

The report of the next friend was filed on September 19, 1947, recommending the adoption.

On September 23, 1947, a copy of the notice of hearing and examination was filed, accompanied by the affidavit of John G. Rowley, which affidavit stated that he had on August 22, 1947, served a true copy of the notice "by personally handing the same to Norma Gills, a minor seventeen years of age." To this copy of the notice was attached a post office department return receipt of registered mail signed by Norma Gills and dated August 22, 1947.

On September 23, 1947, the Probate Court, by journal entry, found that an illegal placement of the infant child had been made, but approved the placement and granted to the petitioners an interlocutory order of adoption.

On December 16, 1947, Norma Gills filed a motion in Probate Court to withdraw her consent to adoption. On January 20, 1948, an amended motion to set aside the interlocutory order of adoption and to strike the consent from the record was filed.

On May 1, 1948, the Probate Court, by journal entry, denied Norma Gills' application to withdraw her consent, overruled the amended motion of January 20, 1948, and confirmed the interlocutory order of September 23, 1947.

A motion for a new trial, filed May 1, 1948, was overruled, and notice of appeal to this court was then filed by Norma Gills, by her mother and next friend, Myrtle Gills, claiming that the Probate Court erred in the following respects:

"(1) The so-called answer and consent of the said Norma Gills was signed four (4) days before any petition for adoption was filed. The court below found that the answer and consent was proper even though no case was pending at the time.

"(2) Norma Gills contended that the answer and consent was blank at the time that she signed the form submitted to her. Appellant contends that the signing of a blank form was a nullity, the lower court held the answer and consent proper.

"(3) The said Norma Gills did not appear in court and sign her consent nor did she sign it in the presence of 'next friend,' as provided by statute.

"(4) The trial court held that she neither had to appear in court nor to sign it before the next friend, although it is admitted in the facts that Norma Gills was in the hospital at the time she signed the alleged answer and consent, and was physically not able to appear in court.

"(5) The said alleged answer and consent was not witnessed by the statutory next friend as required by Section 10512-14 (2) (a).

"(6) The alleged answer and consent was signed by Norma Gills, who is an infant. The court found that it made no difference whether she was an infant or an adult.

"(7) The court erred in finding that proper notice for the hearing on September 23, was had on Norma Gills, an infant.

"(8) The court found that Norma Gills was properly served with notice, although by agreement the facts are that no notice was left with her, but was taken away by the attorney for the adopting parents.

"(9) That the court erred in finding that proper service was had of the September 23rd hearing, although the father of said Norma Gills was not served as the next friend of an infant.

"(10) Although the statute provides that if the child is placed in the home of the petitioners after the petition has been filed, a supplemental petition must be filed in accordance with Section 10512-12, the court totally ignored this section, and did not fix a later date for a hearing upon a supplemental petition that should have been filed.

"(11) Other errors apparent upon the face of the record, prejudicial to the rights of the said Norma Gills."

In this appeal on questions of law, we must bear in mind a fundamental principle, i. e., the judgment and findings of the trial court may be set aside or reversed only if they are contrary to the manifest weight of the evidence or are contrary to law. Where the evidence is conflicting, it is the duty of the trial court to weigh the evidence and determine what inferences should be drawn. Therefore, a judgment based upon conflicting evidence may not be set aside by a reviewing court as against the manifest weight of the evidence, where the judgment is supported by competent evidence presented to the trial court.

The problems for our determination in this case are:

(1) Can a consent to adoption be executed before a petition to adopt is filed?

(2) Must a minor parent of an illegitimate child give consent only in the presence of the "next friend" or in open court?

(3) Can a minor parent of an illegitimate child give consent to adoption of her child?

(4) Can a consent to adoption be withdrawn by the party giving consent, after an interlocutory order of adoption has been entered on the journal of the court?

(5) Was Norma Gills properly served with notice of the hearing had on September 23, 1947?

(6) Was it necessary to file a supplemental petition where (a) the trial court found that there had been an illegal placement of the child, (b) there was evidence that the petition had been added to at the time of filing by someone other than the petitioners or their counsel?

"* * * adoption was unknown to the common law of England; and in states whose jurisprudence is based on that system, the right exists by virtue of the statutes." *Sommers* v. *Doersam,* 115 Ohio St., 139, at page 148, 152 N. E., 387. See, also, *Blaustein* v. *Blaustein,* 77 Ohio App., 281, 283, 66 N. E. (2d), 156.

The General Assembly enacted, effective January 1, 1944, House Bill No. 279 (120 Ohio Laws, 434), which was an act "to revise the laws of the state of Ohio, relative to adoption and to establish an 'adoption code,' and to repeal Sections 10512-9 to 10512-23, inclusive."

By that enactment, the former adoption statutes were repealed, and there was provided a complete proceeding for adoptions. Thereafter, certain of these adoption statutes were amended by changing the form of procedure and by defining the terms used in such

statutes. 121 Ohio Laws, 448. Sections 10512-9, 10512-11, 10512-12, 10512-13, 10512-14, 10512-16, 10512-17, 10512-18 and 10512-20, General Code.

The questions will be considered in the order in which they have been raised.

(1) Section 10512-14 provides that a verified or acknowledged written consent to adoption shall be filed with the court before a final decree or interlocutory order of adoption is entered of record. Nowhere in the adoption statutes is there a requirement that the consent shall be executed or secured after the filing of a petition. It certainly would be unwise for a petitioner to apply for adoption of a child unless he knew that a consent had been obtained. One does not seek to adopt a child that is not a subject for adoption. The obtaining of the consent before a petition is filed is not unlawful.

(2) Section 10512-14 (2) (a), in part, provides:

"The mother of an illegitimate child shall be considered for purposes of this section to be the sole parent and may give such consent alone * * *; if such mother is physically unable to appear in open court to execute such consent, she may execute such consent in the presence of the next friend."

That provision requiring the filing of consent does not say that the consent must be given in open court, although such method would be proper.

The provision referred to is not for an appearance in open court or that such consent must be executed in the presence of the next friend. No exclusive method of executing the consent is required by the statute, and, where the consent is in writing, verified or acknowledged, and then filed in the court, the terms of the statute have been complied with.

(3) The adoption statutes do not specify that a par-

ent shall be of full age when the consent to adoption is executed. It is a matter of common knowledge that many children are born to parents who have not arrived at their majority. It must be assumed that when the General Assembly, in Section 10512-14 (2), used the words, "adult or minor," in referring to the person giving consent, it meant that a minor parent could execute a consent to adoption.

(4) Section 10512-14 reads, in part:

"Such consents shall be applicable only to the specific adoption proposed by the petition. Such consents may not be withdrawn after the entry of an interlocutory order, or after the final decree, of adoption."

The trial court found no fraud, deceit or duress which might have vitiated the consent. What the trial court did find was that the party giving consent changed her mind. In such a situation the statute controls, and, therefore, the consent could not be withdrawn after the entry of the interlocutory decree.

(5) Section 10512-12 provides that "the court shall fix a day for hearing * * * and shall cause notice to be given to the guardian of the person of such child, if any, and to the parents or parent of the child * * *."

The statute does not require a summons but only notice to be served on the parent. The evidence is conflicting, but we do know that Norma Gills, the mother of the infant, signed a receipt of notice. The attorney for petitioners gave the notice to her in an envelope which he said she opened and gave back to him, and which she says she returned to him at his request without opening it or reading it. It is certain from the evidence that she knew there was to be a hearing on the petition to adopt. The court found from the conflicting evidence that Norma Gills had notice of the time of the hearing. However, in her desire to not know who was seeking to adopt her child, she did

not retain the written notice. Her return to the attorney of the paper on which the notice was printed did not invalidate the fact of notice.

The word "notice" is defined in Webster's New International Dictionary (2 Ed.) as "1. Information; intimation or warning, esp. of a formal nature; announcement * * *." "Notice" is used in the statute as a means of advice or information in writing, to apprise a person of some court proceeding. See Section 10501-21, General Code, as amended September 29, 1945.

The finding of the trial court on this point is not contrary to law.

(6) The appellant, Norma Gills, says that a supplemental petition should have been filed, since the child was placed with petitioners after the petition was filed in the Probate Court, which court made a finding of illegal placement.

Section 10512-11 is, in part:

"* * * when the child enters the home of the petitioner after the filing of the petition such information respecting the placement shall forthwith be furnished to the court by a supplemental petition."

Before the amendment of Section 10512-16, effective January 1, 1946, it read in part: "If the Probate Court finds that a child * * * was placed in the home of the petitioner in violation of the laws * * * it *shall* certify a copy of such finding to the Juvenile Court * * *." (Italics ours.) This section was then amended— changing, among other things, the word *shall* to *may,* and permitting the Probate Court to approve or disapprove of such placement.

The Probate Court in the instant case found an illegal placement, but also gave its approval of this placement for the purpose of adoption.

No supplemental petition is required to be filed after a finding of illegal placement.

The petition, which was filed on August 20, 1947, says that the child entered the home of the Burdettes on August 20, 1947; the report of the investigator "next friend" says that the child entered the Burdette home on August 21, 1947. Counsel for petitioners say that they did not include in the petition the date when the child came to the Burdette home, so we cannot determine who made this insertion and whether before or after filing.

The record does not disclose when the child left the hospital. The mother, Norma Gills, testified she left the hospital five days after the birth, which was August 15, 1947, that is to say, she left on August 20, 1947, and a reasonable inference is that the child was taken on the same day. It was never seen by Norma, but was in the Burdette home from the time it came from the hospital.

The finding of illegal placement did not refer to this disparity of dates as to when the Burdettes got the child, but to the violation of the laws regarding placement of children in foster homes. Section 1352-13, General Code.

The purpose of the supplemental petition is to bring before the court information as to a placement made in the home seeking adoption, after the petition is filed. The Probate Court had before it the petition, the report of "next friend" and the evidence. There is no bill of exceptions to show from what evidence he reached the judgment of approval, and there has been no appeal taken from that order. It must be assumed that all the facts were before the trial judge, and that he determined from those facts that no supplemental petition was required.

We have examined all the claimed errors, and find none prejudicial to the rights of the appellant.

*Judgment affirmed.*

DOYLE, P. J., and STEVENS, J., concur.