**VOLTER, Appellant,**

v.

**C. SCHMIDT COMPANY, INC.; Cincinnati, Inc., Appellee.**

[Cite as *Volter v. C. Schmidt Co., Inc.* (1991), 74 Ohio App.3d 36.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900167.

Decided May 8, 1991.

*Hermanies & Major* and *Anthony D. Castelli,* for appellant.

*Dinsmore & Shohl, Patrick D. Lane* and *Steven H. Ray,* for appellee.

*Per Curiam.*

This cause came on to be heard upon an appeal from the Hamilton County Court of Common Pleas.

Plaintiff-appellant, Steven Volter, appeals from the summary judgment entered in favor of defendant-appellee, Cincinnati, Inc., the manufacturer of a press brake which injured Volter's hand as he operated the machine during the course of his employment with defendant, C. Schmidt Company, Inc. ("Schmidt"). Volter sued both his employer and the manufacturer, alleging that the employer's conduct was willful, wanton or malicious and that Cincinnati, Inc. was strictly liable for having manufactured a machine that was defective and the proximate cause of his injuries. Schmidt was dismissed from the suit with prejudice following a settlement with Volter, but his action

against Cincinnati, Inc. remained. Volter now argues that the trial court erred when it granted summary judgment in favor of the manufacturer because the employer's failure to install adequate safeguards was not a superseding cause which relieved the manufacturer from its liability for selling a defective product. We hold that there is a genuine issue of material fact, and therefore reverse the trial court's judgment and remand the cause for further proceedings.

An appellate court reviewing a summary judgment is required by Civ.R. 56 to view all inferences in the light most favorable to the party opposing the motion for summary judgment. See *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924. Viewing the inferences in such a light, we find within the record a genuine question of material fact as to whether the press brake manufactured and sold by Cincinnati, Inc. was defective at the time of the sale. A press brake is a machine designed to bend and form metal between an upper die and a lower die. The dies are brought together with great force by the descent of a ram holding the upper die to contact the metal to be formed which rests on the lower die, at the "point of operation." The press brake in question was manufactured by Cincinnati, Inc. and sold to Schmidt in 1957.

According to the deposition testimony of Volter's expert witness, Gerald Rennell, the machine was defective in 1957 because it was sold without a point-of-operation safety system which would have prevented Volter's hands from entering the point of operation during the lowering of the ram. Rennell also stated that the machine was defective because it lacked a single-stroke device which would have prevented inadvertent repetition of the lowering of the ram caused by Volter's failure to lift his foot off the clutch pedal which activated the machine. Rennell further testified that these safety precautions were known and available in 1957 and that the manufacturer could have installed them without knowing of, or interfering with, the actual configuration of dies and material to be used by the product's end user.

 Before summary judgment may be granted, a reviewing court must determine that no genuine issue as to any material fact remains to be litigated, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion from the evidence, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 274. Under Ohio law, a manufacturer is liable for injuries resulting from a defect in design if the benefits of the challenged design do not outweigh the risks inherent in such design. *Cremeans v.*

*Internatl. Harvester Co.* (1983), 6 Ohio St.3d 232, 6 OBR 302, 452 N.E.2d 1281. Cincinnati, Inc. adduced no expert deposition testimony asserting that the benefits of the press brake's design in fact outweighed the risks inherent in that design. Volter was therefore not obligated to counter such an assertion with detailed expert deposition testimony concerning the risk-benefit test, beyond making the assertion that there existed a design defect. See Civ.R. 56(E); *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331. We hold that the testimony within Rennell's deposition was sufficient to raise a genuine question of material fact which precluded judgment in Cincinnati, Inc.'s favor as a matter of law.

Instead of arguing below that no design defect existed, Cincinnati, Inc. argued principally that any defect in the press brake's design was not the proximate cause of Volter's injuries because the employer's failure to provide safeguards in violation of safety regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), and by the industry standards developed by the American National Standards Institute ("ANSI"), constituted an intervening and superseding cause which relieved the manufacturer from liability. In fact, Schmidt received multiple OSHA citations on February 11, 1977, for failing to install point-of-operation guards on its press brakes. The employer later equipped the press brake in question with hold-back straps which prevented an operator's hands from entering the point of operation, but apparently discontinued their use by tying them to the top of the machine.

Cincinnati, Inc. argues that the employer's acts or omissions amounted to an intentional tort, based on the allegation contained in Volter's complaint that such acts were "willful, wanton or malicious," and on Rennell's deposition testimony that, in his opinion, the employer's method of operating the machine was substantially certain to cause injury to an operator.

Traditionally, an intentional tort committed by a third party constitutes an intervening act which supersedes the negligence of the party creating the risk of harm, and relieves that party from liability. See Restatement of the Law 2d, Torts (1965) 469, Section 442B; *Federal Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 543 N.E.2d 769; *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815. Whether an intervening act breaks the causal connection between the initial negligent act and the injury is determined by asking whether the intervening act was reasonably foreseeable in light of all attending circumstances. See *Mudrich v. Standard Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 121, 90 N.E.2d 859, 863. Where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct, the intentional act is considered a superseding cause because such acts are typically not foresee-

able. See Restatement of Torts 2d, *supra*, at Sections 442B, 448 and 449; *Federal Steel & Wire Corp.*, *supra*, 45 Ohio St.3d at 175–176, 543 N.E.2d at 774–775. These cases and Restatement sections are addressed to the initial actor's negligence, however, and not to a situation involving the imposition of strict liability on the initial actor. See *Cascone, supra; Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265.

We note that the institute that promulgated the Restatement of Torts 2d, while providing for strict liability under Section 402A, expressed neither approval nor disapproval of a seller's strict liability in cases involving a question of whether the responsibility for discovery and prevention of a dangerous defect is shifted to an intermediate party who is to further process or make substantial changes to a product. Restatement of Torts 2d, *supra*, at Section 402A, Comment *p*. The authors noted that in some situations the responsibility will be shifted, and in others, it will not.

The Ohio Supreme Court has held that the defense of intervening causation may be invoked to avoid strict liability in a products liability case where the intervening cause is unforeseeable and is the proximate cause of the damage. Liability attaches to the person or persons whose acts or omissions proximately cause the injury or damage. *R.H. Macy & Co. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, syllabus. The *Macy* court acknowledged the distinction between the negligence concept of ordinary care and the strict-liability theory which "leaves no room for a comparison of fault." *Id.* at 112, 554 N.E.2d at 1316–1317. Nevertheless, the court held that a jury instruction accurately set forth the applicable law to the effect that if the act of R.H. Macy & Co., the purchaser of an elevator in which several patrons were injured, "or the acts of a vandal merely contributed to the act or omission of Otis [the elevator manufacturer] (without removing the effect of Otis's act or omission), then Otis is *completely* liable for the damages. If Macy's act or the acts of a vandal *completely* eliminated and, hence, made irrelevant the effect of Otis's act or omission, then Otis is not liable." (Emphasis in original.) *Id.* at 112, 554 N.E.2d at 1317. We find the former proposition, that the intentional act of a vandal might not completely absolve a manufacturer of strict liability under the principles of proximate causation, to evince the Supreme Court of Ohio's intent not to strictly apply to actions involving strict liability the rule in negligence actions that intentional torts constitute superseding causes. See, also, *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 151, 566 N.E.2d 1203, 1209 (noting that issue of whether employee's injury was proximately caused by employee or employer and not manufacturer is a jury question). But, see, *Miles v. Kohli & Kaliher Assoc., Ltd.* (C.A.6, 1990), 917 F.2d 235, 251 (rule in *Macy* applies to either negligence or strict-liability actions).

Cincinnati, Inc., cites a Minnesota case, *Huber v. Niagra Machine & Tool Works* (Minn.1988), 430 N.W.2d 465, in support of the proposition that a manufacturer cannot foresee an employer's OSHA violation. *Huber*, however, concerned only a manufacturer of a nondefective component part, a foot switch, which was later installed on a separately manufactured press brake and modified by an employer who misused the product by removing the safety mechanisms permanently attached to the foot switch. The court expressly disclaimed application of "prior decisions establishing that the manufacturer of a finished product has a duty to warn ultimate users of dangers presented by its product and this duty may not be delegated to an intermediary. Cf. *Hill v. Wilmington Chemical Corp.*, 279 Minn. 336, 341, 156 N.W.2d 898, 902 (Minn.1968)." *Huber*, *supra*, at 468, fn. 2.

In fact, the Supreme Court of Minnesota had previously ruled in a suit alleging a press brake manufacturer's strict liability that "OSHA violations cannot be considered superseding causes which relieve a manufacturer of its duty to produce a safe product," under the circumstances of the case, and that "state safety regulations violations do not relieve a manufacturer of Section 402A liability as a matter of law but are merely evidence to put before a jury." *Bilotta v. Kelley Co., Inc.* (Minn.1984), 346 N.W.2d 616, 625 and fn. 5, citing *Johnson v. Niagra Machine & Tool Works* (C.A.8, 1981), 666 F.2d 1223, 1226; *Heckman v. Federal Press Co.* (C.A.3, 1978), 587 F.2d 612, 616–617; *Ruberg v. Skelly Oil Co.* (Minn.1980), 297 N.W.2d 746, 750.

We believe that the rule pronounced in *Bilotta* is the better view and in accord with the Ohio Supreme Court's holding in *R.H. Macy & Co.*, *supra*. Cf. *Cascone v. Herb Kay Co.*, *supra*, at paragraph two of the syllabus. Although one Ohio court has intimated that OSHA violations may constitute some evidence of an employer's misuse of a product which relieves a manufacturer of strict liability, see *Knitz v. Minster Machine Co.* (Feb. 9, 1987), Lucas App. No. L–84–125, unreported, at 67–69, 1987 WL 6486 (following remand, in *Knitz v. Minster Machine Co.* [1982], 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814), we are aware of no Ohio precedent establishing, as a rule of law, that an employer's OSHA violation for failure to equip a machine with safety devices relieves a manufacturer of strict liability. The other case cited by Cincinnati, Inc., *Harasyn v. Normandy Metals, Inc.* (Mar. 5, 1987), Cuyahoga App. No. 51446, unreported, 1987 WL 7436, involved a defect present in the modification of the product by the employer, and did not concern injury resulting from an alleged defect in the machine at the time it left the manufacturer's hands, as in the present case.

Although the Supreme Court of Ohio has held that a manufacturer's *compliance* with Industrial Commission of Ohio standards precludes, as a

matter of law, a finding that the manufacturer was negligent, *Temple v. Wean United, Inc., supra,* the holding is expressly limited to cases involving negligence and has been distinguished in a later products liability case, *Knitz v. Minster Machine Co., supra,* 69 Ohio St.2d at 464, 23 O.O.3d at 405, 432 N.E.2d at 817. Further, a refusal to impose a rule of law absolving manufacturers from liability where an intermediate employer has violated OSHA is in accordance with OSHA itself, which specifically states that it is not intended to affect the civil standard of liability. Section 653(b)(4), Title 29, U.S.Code. See, also, *Minichello v. U.S. Industries, Inc.* (C.A.6, 1985), 756 F.2d 26, 29; *Mitchell v. Hyster Co.* (Jan. 24, 1990), Hamilton App. No. C–880626, unreported, 1990 WL 4265.

We note that in some cases descending from *Bexiga v. Havir Mfg. Co.* (1972), 60 N.J. 402, 290 A.2d 281, 285, OSHA regulations have been held to be inadmissible as evidence where strict liability has been alleged. See *Bailey v. V & O Press Co., Inc.* (C.A.6, 1985), 770 F.2d 601, 607 (applying Ohio law regarding manufacturer's noncompliance with industry standards); *Murphy v. L & J Press Corp.* (C.A.8, 1977), 558 F.2d 407, 411–412; *Union Supply Co. v. Pust* (1978), 196 Colo. 162, 583 P.2d 276, 283; *Duke v. Gulf & Western Mfg. Co.* (Mo.App.1983), 660 S.W.2d 404, 416. Given our analysis of the Supreme Court of Ohio's reasoning in *R.H. Macy & Co., supra,* however, we do not believe that evidence of the employer's OSHA violations can be excluded from a factfinder's consideration of proximate cause and whether the employer's omissions *"completely"* eliminated the effect of any defect in the machine produced by Cincinnati, Inc. See, also, *Smith v. Raymond Corp.* (Oct. 25, 1990), Cuyahoga App. No. 57670, unreported, 1990 WL 161996; Annotation, Products Liability: Manufacturer's or Seller's Obligation to Supply or Recommend Available Safety Accessories in Connection With Industrial Machinery or Equipment (1980 & Supp.), 99 A.L.R.3d 693, Sections 2(a), 3.

▬ Although we hold that an employer's intentional tort does not relieve a manufacturer's strict liability as a matter of law, we are further unable to say as a matter of law that the employer committed an intentional tort in this case. Viewing the inferences to be drawn from the record in a light most favorable to Volter, see Civ.R. 56; *Williams v. First United Church, supra,* we cannot conclude, as a matter of law, that Schmidt's act of tying the hand restraints to the top of the machine, or its omission when it failed to equip the machine with safety restraints, constituted an intentional tort. The record does not show that Volter's settlement with Schmidt included any stipulation by either party that the employer's acts or omissions were intentional, and the pleading directed to Schmidt cannot be considered binding with regard to Volter's action against Cincinnati, Inc. See Civ.R. 8(A). Further, although

the expert testimony contained in the deposition of Gerald Rennell falls within Evid.R. 702, which provides for expert testimony if scientific, technical or other special knowledge will assist a trier of fact to understand the evidence or to determine a fact in issue, Rennell's expertise does not extend so far as to be conclusive upon a trier of fact in determining the ultimate issue of whether Cincinnati, Inc. committed an intentional tort. See Evid.R. 702, and Staff Note; Civ.R. 56(C). Cf. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph three of the syllabus.

In light of the foregoing, we hold that there exists a genuine question of material fact as to whether the failure to equip the press brake with safety devices and the violation of OSHA and ANSI standards by Schmidt constituted an intervening act which completely superseded the effect of the alleged defect present in the press brake at the time it left the manufacturer's hands. This question of fact, in addition to the question concerning the existence of a design defect, precluded summary judgment and, accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings in accordance with this decision and the law.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., KLUSMEIER and HILDEBRANDT, JJ., concur.