[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 507.]

PERKINS, ADMR., *v.* WILKINSON SWORD, INC. ET AL.

[Cite as *Perkins v. Wilkinson Sword, Inc.*, 1998-Ohio-16.]

*Torts—Products liability—Risk-benefit test of the Ohio Products Liability Act may be used in attempting to prove a design defect in a properly functioning disposable cigarette lighter.*

(No. 97-2507—Submitted August 19, 1998—Decided November 10, 1998.)

ON ORDER Certifying a Question of State Law from the United States Court of Appeals for the Sixth Circuit, No. 96-4144.

_____

{¶ 1} This case comes to us as a certified question of state law from the United States Court of Appeals for the Sixth Circuit. The court certified the following facts to us.

{¶ 2} Petitioner, Thomas Lee Perkins, was the former husband of Traci Perkins and the father of Chelsie, Andrew, and Chrystal Perkins. Although Thomas and Traci had been divorced, they were living together, with their three children, in Ashland, Ohio. On July 13, 1992, their residence caught fire, resulting in the tragic deaths of Traci, Andrew, and Chrystal.

{¶ 3} Petitioner, as administrator of the estates of Traci, Andrew, and Chrystal Perkins, brought this wrongful death products liability action in the United States District Court, Northern District of Ohio, under that court's diversity jurisdiction. Petitioner alleged that the fire was started by four-year-old Chelsie Perkins while playing with a disposable butane cigarette lighter manufactured and sold by respondents, Wilkinson Sword, Inc. and Wal-Mart, Inc., and that the lighter was defective in design because "it lacked feasible child resistant features."

{¶ 4} The district court granted summary judgment in favor of respondents, finding that the lighter was not defective in design under Ohio law. In so finding,

the court rejected petitioner's claim that the lighter could be found defective under the "consumer expectation" test codified at former R.C. 2307.75(A)(2), and held that former R.C. 2307.75(A)(1)'s "risk-benefit" test is inapplicable to properly functioning disposable lighters.

{¶ 5} The Sixth Circuit Court of Appeals, while agreeing with the district court that the petitioner cannot prevail on a consumer-expectation theory, is "uncertain * * * whether Ohio's statutory risk-benefit test is applicable to properly functioning disposable lighters."

{¶ 6} The cause is now before this court pursuant to S.Ct.Prac.R. XVIII.

_____

*Michael M. Heimlich*, for petitioner.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C., Carl A. Eck, Louis C. Long* and *Eric A. Kauffman*, for respondents.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 7} The United States Court of Appeals for the Sixth Circuit has certified the following question to this court for our determination:

"May the risk-benefit test of the Ohio Products Liability Act be used in attempting to prove a design defect in a properly functioning disposable cigarette lighter?"

{¶ 8} For the reasons that follow, we answer the certified question in the affirmative.

{¶ 9} In cases arising prior to the enactment of the Ohio Products Liability Act, we established that there are "two alternatives available to determine whether a product design is in a defective condition * * *[:] the consumer-expectation standard [and] a second, alternative, risk-benefit standard." *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 7, 523 N.E.2d 489, 495. We held that a product is defective in design "if it is more dangerous than an ordinary

consumer would expect when used in an intended or reasonably foreseeable manner *or* if the benefits of the challenged design do not outweigh the risk inherent in such design." (Emphasis added.) *Knitz v. Minster Machine Co.* (1982), 69 Ohio St.2d 460, 23 O.O.3d 403, 432 N.E.2d 814, syllabus,

{¶ 10} We made clear that these standards are not mutually exclusive, but instead constitute "a single, two-pronged test" for determining whether a product is defectively designed. *Cremeans v. Internatl. Harvester Co.* (1983), 6 Ohio St.3d 232, 6 OBR 302, 452 N.E.2d 1281, at the syllabus. As then Judge (now Chief Justice) Moyer explained in *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 97, 24 OBR 164, 167, 493 N.E.2d 293, 296, "a product may be found defective in design even if it satisfies ordinary consumer expectations if the jury determines that the product's design embodies 'excessive preventable danger.' " In other words, "if the jury concludes that one standard is not met, the jury may consider the other standard." *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 693, 595 N.E.2d 360, 376.

{¶ 11} In enacting the Ohio Products Liability Act, the General Assembly codified this analytic approach at former R.C. 2307.75,[1] which provided:

"(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if *either* of the following applies:

"(1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;

---

1. An amendment after this case arose eliminated the consumer-expectation test, leaving this section of the statute otherwise substantively the same. Am.Sub.S.B. No. 350, 146 Ohio Laws, Part II, 3867, 3950.

"(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (Emphasis added.) Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661.

{¶ 12} Thus, "Section 2307.75 allows the trial court to apply one or another, or both, of two distinct 'design defect' standards. The plaintiff can choose to proceed under one or both tests." (Footnote omitted.) O'Reilly & Cody, Ohio Products Liability Manual (1992) 70-71, Section 6.08. Indeed, "[t]he very existence of a risk/benefit analysis in the Ohio cause of action for design defect helps those plaintiffs who would otherwise lose in a consumer expectation case." (Footnotes omitted.) *Id.* at 80, Section 7.05.

{¶ 13} The Act does not contain any exception for properly functioning products, and does not limit the applicability of the risk-benefit test to products which malfunction. Instead, the Act collects all product liability claims into a standard set of theories of recovery, one of which is that the product in question was defective in design or formulation as described in former R.C. 2307.75. See former R.C. 2307.71(M) and 2307.73(A). 142 Ohio Laws, Part I, 1675-1676, 1677-1678. There is absolutely no basis under the common or statutory law of Ohio for creating a dichotomy between properly and improperly functioning products when applying the risk-benefit test.

{¶ 14} Nevertheless, the district court relied heavily on *Caveny v. Raven Arms Co.* (S.D.Ohio 1987), 665 F.Supp. 530, affirmed without published opinion (C.A.6, 1988), 849 F.2d 608, and *Koepke v. Crosman Arms Co.* (1989), 65 Ohio App.3d 1, 582 N.E.2d 1000, for the proposition that Ohio's statutory risk-benefit test is not applicable to a properly functioning disposable lighter.

{¶ 15} In *Caveny*, plaintiffs sought to recover from the manufacturer of a .25 caliber handgun, a so-called Saturday Night Special, which was used to murder plaintiffs' decedent. Plaintiffs alleged that this handgun had no legitimate purpose

and, therefore, its risks far exceeded its benefits. The court, finding the risk-benefit standard inappropriate in this case, reasoned as follows:

"This standard is only applicable in situations in which a product has functioned improperly, not when products have functioned as intended. For instance, in *Cremeans* * * * a tractor that slipped off a trailer and overturned did not have roll-over protection. Similarly, in *Knitz* * * * a punch press lacked safety guards. In both of these cases, the products operated improperly due to design inadequacies. Here, by contrast, the handgun operated as intended; when fired a bullet struck an individual in its path. In other words, the risk/utility test is only proper when the product could be made safer through an alternative design and not when the product is by its nature dangerous." *Id.*, 665 F.Supp. at 532-533.

{¶ 16} In *Koepke*, the court relied on *Caveny* to find that "[i]n the absence of any allegation by appellants that the BB gun functioned improperly, we conclude that the risk-benefit test does not apply in this case * * *." *Id.*, 65 Ohio App.3d at 3, 582 N.E.2d at 1001.

{¶ 17} According to respondents, "[t]he risk-utility test may *only* be applied when something goes wrong with the product," *i.e.*, when the product "malfunctioned." (Emphasis *sic*.) By way of illustration, respondents explain that the products in *Knitz* and *Cremeans* "operated *improperly*, and not as intended, due to design inadequacies. Here, by contrast, the disposable lighter operated properly and as intended; when the lighter was activated, it produced a flame. Had the lighter exploded when activated due to a design inadequacy, however, then, and only then, would the risk-utility test be applicable." (Emphasis *sic*.)

{¶ 18} In attempting to limit Ohio's risk-benefit test to those situations in which a product malfunctions, the district court, respondents, and the courts in *Caveny* and *Koepke* proceed from the premise that the products in *Knitz* and *Cremeans* failed to operate properly and as intended. However, the limitation

cannot stand because the premise is faulty; no malfunction occurred in either the punch press in *Knitz* or the tractor in *Cremeans*.

{¶ 19} In *Knitz*, 69 Ohio St.2d at 467, 23 O.O.3d at 407, 432 N.E.2d at 819, we held the risk-benefit test applicable to determine whether the "press design was defective by allowing accidental tripping of the foot pedal control and in failing to provide a point of operation guard when the foot pedal is operative." However, these design inadequacies did not cause the press to malfunction. To use respondent's terminology, had the press double-tripped upon activation of the foot switch, or become active without the operator depressing the foot pedal, then, and only then, could it be said that the press malfunctioned. Instead, the press in *Knitz* operated properly and precisely as it was intended to operate—when the foot switch was activated, the press ram descended. The activation of the foot switch was not caused by any malfunction or design inadequacy, but by simple human error. The press tripped when the plaintiff, who was operating the press, inadvertently and accidentally depressed the foot pedal while her right hand was within the point of operation.

{¶ 20} Similarly, in *Cremeans*, 6 Ohio St.3d at 233, 6 OBR at 303, 452 N.E.2d at 1283, we held the risk-benefit test applicable to determine "whether the design of the tractor without roll-over protection was in a defective condition." However, it was an error in judgment, not a malfunction or design inadequacy, that caused the tractor in *Cremeans* to overturn. The plaintiff was attempting to load the tractor onto a trailer, and the tractor overturned when it slipped off the trailer.

{¶ 21} Thus, *Knitz* and *Cremeans* provide no support for the proposition that Ohio's risk-benefit test is applicable only in those situations where a product has functioned improperly. To the contrary, these cases stand for the proposition that a product may be found defective in design under the risk-benefit test where the manufacturer fails to incorporate feasible safety features to prevent harm caused by foreseeable human error.

**{¶ 22}** Moreover, even if we followed *Caveny*, we would still find the risk-benefit test to be appropriate in the present case. According to *Caveny*, a product functions improperly, and thus the risk-benefit test applies, "when the product could be made safer through an alternative design." Under this reasoning, the risk-benefit test would apply when a lighter (the product) could be made safer through the inclusion of child-resistant features (an alternative design).

**{¶ 23}** In fact, this is precisely the analysis that the court later employed in *Aikman v. BIC Corp.* (Nov. 13, 1991), S.D.Ohio No. C-3-89-272, unreported. On facts virtually identical to those in the case *sub judice*, the court in *Aikman* held summary judgment to be inappropriate on plaintiff's claim that "the lighter was defective, under a risk-benefit analysis, because it did not include child resistant features." *Id.* at 12-13. In reaching its holding, the court distinguished its prior decision in *Caveny* as follows:

"In *Caveny*, the plaintiff alleged that the product by its very nature was unsafe, not that it could be made safer. It was on that basis that Judge Spiegel concluded that the gun was not defective under a risk-benefit analysis. Unlike the plaintiff in *Caveny*, the Plaintiff herein argues that Defendant could have made the lighter safer, by adopting an alternative design which would make the lighter childproof; therefore, *Caveny* does not provide the basis for sustaining this branch of Defendant's motion for summary judgment." *Id.* at 12.

**{¶ 24}** Respondents argue, however, that "*Aikman* was in error when it repudiated the analogy to a hand gun made positive in *Caveny*. As the United States Court of Appeals for the Sixth Circuit recognized in *Byler v. Scripto-Tokai Corp.*, 1991 WL 181749 (6th Cir. September 17, 1991) [Nos. 90-6112 and 90-6113, unreported], a case involving a disposable cigarette lighter, some products—such as guns, knives or lighters—invite contemplation of the real possibility of danger regardless of their design." In *Byler*, the court held that, under the law of Kentucky, lighters without child-resistant features are not "unreasonably dangerous" because

"[t]he dangers of disposable butane lighters are both obvious and unavoidable." *Id.* at 4. Respondents' reliance on *Byler* is misplaced because the law in Kentucky, as it was interpreted in *Byler*, is markedly different from products liability law in Ohio.[2]

**{¶ 25}** Unlike Kentucky, Ohio does not require the plaintiff in a design defect case to prove that a product is "unreasonably dangerous." In *Knitz, supra*, 69 Ohio St.2d at 464-465, 23 O.O.3d at 406, 432 N.E.2d at 817, fn. 2, we explicitly "dispense[d] with any requirement for strict liability in tort that a defect be unreasonably dangerous." The General Assembly has also dispensed with the unreasonable-danger requirement in former R.C. 2307.75(A), providing instead, as we did in *Knitz*, that the plaintiff must prove only that a product is "defective in design" under either a risk-benefit or consumer-expectation standard.

**{¶ 26}** Unlike Kentucky law, R.C. 2307.75(D) limits the application of the "unavoidably unsafe" defense to design defect claims involving "[a]n ethical drug or ethical medical device," thus precluding its application in claims involving disposable lighters. See, also, *Knitz, supra*, 69 Ohio St.2d at 464-465, 23 O.O.3d at 406, 432 N.E.2d at 817, fn. 2 (distinguishing "defective products from those foods or drugs which necessarily involve some risk of harm").

**{¶ 27}** Also, unlike Kentucky, Ohio does not recognize the "obvious danger" defense in a design-defect claim. While provision is made in R.C. 2307.76(B) for an "open and obvious risk" defense in failure-to-warn claims, no such provision is contained in R.C. 2307.75 with respect to design-defect claims.

---

2. Respondents also cite several decisions from other jurisdictions in which courts have denied recovery on claims involving disposable lighters without child-resistant features. Respondents then argue that these cases represent "[t]he vast weight of precedent," and that *Aikman* "has not been followed in any other reported decision." The truth is that courts are split over this issue, both among and within various jurisdictions. See Annotation, Products Liability: Lighters and Lighter Fluid (1993), 14 A.L.R.5th 47. Upon review of these and other cases, we find that, like Kentucky law, the law in those other jurisdictions that have denied recovery is too different from Ohio law to serve as persuasive authority.

Instead, R.C. 2307.75(B)(2) lists "the likely awareness of product users * * * of those risks of harm" as one factor to be considered in determining the foreseeable risks associated with a product's design. However, this factor may be outweighed by the other statutory risk-benefit factors set forth in R.C. 2307.75(B) and (C).[3]

{¶ 28} Finally, respondents argue that a manufacturer cannot be held liable for failing to make cigarette lighters childproof because cigarette lighters are intended to be utilized by adults and not children. However, R.C. 2307.75 does not support such a sweeping and peremptory pronouncement that the manufacturer of

---

3. In finding that the dangers of disposable butane lighters are both obvious and unavoidable, the court in *Byler* reasoned that the production and maintenance of a flame are inherent aspects of a lighter, and that "[a]ny disposable butane lighter of any design necessarily must possess these characteristics." *Id.* at 3-4. Under R.C. 2307.75(E), recovery is barred where "the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community."

However, R.C. 2307.75(E) does not apply automatically to bar claims involving the propriety of incorporating safety features into the product. Fundamentally, such claims admit that one or more aspects or characteristics of the product cannot be eliminated, but maintain that the harm for which plaintiff seeks to recover could have been prevented by the incorporation of a safety device to protect against a dangerous aspect of the product. These cases are to be resolved by focusing on the viability of the proposed alternative design, not on one or more of several inherent characteristics of the product. See R.C. 2307.75(C)(2) and (F).

Stated differently, such a claim brings into focus an aspect or characteristic of the product which would not be apparent in the absence of such an allegation. The obvious inherent characteristics of a lighter are the production and maintenance of a flame. These characteristics cannot be eliminated by any design. However, this fact alone would not preclude recovery any more than would the fact that the punch press in *Knitz* must necessarily create a pinch point, or that the lawnmower in *Eldridge* must necessarily have rotating blades. These are not the characteristics which are alleged to have caused the harm. Instead, in each case another aspect or characteristic of the product which could have been eliminated comes into focus by virtue of the proposed safety feature. In *Knitz*, the press allowed the ram to descend while the operator's hand was within the point of operation. In *Eldridge*, the lawnmower allowed the operator's foot to slide into the point of operation. In the present case, the lighter was susceptible to activation by children. It is these latter aspects or characteristics of the product that become the focal point of an R.C. 2307.75(E) analysis; and the question whether these characteristics could have been eliminated depends on the propriety of the proposed alternative design inclusive of a safety feature. Any other application of R.C. 2307.75(E) would generally eliminate the failure-to-guard case, a result clearly not envisioned under R.C. 2307.75. Thus, R.C. 2307.75(E) does not apply to preclude recovery in this case simply because the production and maintenance of a flame are inherent characteristics of a lighter.

a product intended for adult use can never be liable for failing to improve safety by making its product child resistant. To the contrary, R.C. 2307.75 fully contemplates that a manufacturer may be liable for failing to use a feasible alternative design that would have prevented harm caused by an unintended but reasonably foreseeable use of its product. See R.C. 2307.75(B)(1) and (3), (C)(2) and (F).

{¶ 29} Lighters are commonly used and kept around the home, and it is reasonably foreseeable that children would have access to them and attempt to use them. "It has been estimated, for example, that 5,800 residential structural fires, 170 deaths, and 1,190 injuries occur each year because of children under 5 playing with lighters. The annual cost of children playing with lighters has been estimated at $300 million to $375 million." Annotation, Products Liability: Lighters and Lighter Fluid (1993), 14 A.L.R.5th 47, 56, Section 2[a].

{¶ 30} In *Queen City Terminals v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 621, 653 N.E.2d 661, 671-672, we explained:

"The first and foremost objective of strict liability is to promote product safety. The doctrine of strict products liability provides manufacturers a strong incentive to design, manufacture, and distribute safe products. Prosser & Keeton [Law of Torts (5 Ed.1984)], Section 4 at 25-26. 'The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods.' [2] Restatement [of the Law 2d, Torts (1965)] Section 402A, Comment *f*. This court has expressly stated that 'the public interest in human life and safety can best be protected by subjecting manufacturers of defective products to strict liability in tort when the products cause harm.' *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 464-465, 21 O.O.3d 285, 291, 424 N.E.2d 568, 575."

**{¶ 31}** This public policy nowhere applies with more force than where it comes to the protection of our children. We therefore decline the invitation to read into R.C. 2307.75 any provision that would *ipso facto* preclude liability for harm caused by the foreseeable use of a lighter by a child.

**{¶ 32}** Based on all of the foregoing, we hold that the risk-benefit test of the Ohio Products Liability Act may be used in attempting to prove a design defect in a properly functioning disposable cigarette lighter. We answer the certified question in the affirmative.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————