**BLEH et al., Appellants,**

v.

**BIRO MANUFACTURING COMPANY, Appellee, et al.**

[Cite as *Bleh v. Biro Mfg. Co.* (2001), 142 Ohio App.3d 434.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000051.

Decided April 6, 2001.

436

*Rendigs, Fry, Kiely & Dennis, L.L.P., Steven D. Hengehold* and *Richard T. Lauer,* for appellants.

*Ziegler & Schneider, P.S.C.,* and *Steven C. Martin,* for appellee.

*Per Curiam.*

Plaintiffs-appellants, Michael Bleh, a minor, and his parents, Leonard and Kimberly Bleh, appeal from a jury verdict and the trial court's judgment in favor of defendant/third-party-plaintiff-appellee, Biro Manufacturing Company. Michael Bleh suffered the traumatic partial amputation of his left hand when it tragically became caught in a meat grinder manufactured by Biro. The Blehs filed a complaint against Biro, in which they asserted a product-liability claim, asserting that the meat grinder was defectively designed. The Blehs' complaint against Biro also contained negligence claims against another defendant, Thomp-

son Equipment Company. Biro filed various third-party complaints for contribution and indemnity, which were voluntarily dismissed or otherwise disposed of by the trial court. Consequently, the jury determined only the Blehs' claims against Biro and Thompson.

In their five assignments of error, they contend that (1) to the extent that the jury found that the meat grinder was not defective, the verdict was against the manifest weight of the evidence, (2) to the extent that the jury found that any defect in the meat grinder was not the proximate cause of the Blehs' injuries, the verdict was against the manifest weight of the evidence, (3) the trial court erred in instructing the jury on superseding/intervening cause, (4) to the extent that the jury found that the failure to unplug the meat grinder was a superseding/intervening cause, the verdict was against the manifest weight of the evidence, and (5) the trial court erred in failing to grant the Blehs' motion for judgment notwithstanding the verdict or for a new trial. Because the jury's verdict is supported by substantial competent, credible evidence, the assignments of error are not well taken.

On the day he was injured, sixteen-year-old Michael Bleh was working with his father at Langen Meats. Earlier that day, Leonard Bleh had asked another employee to disassemble the meat grinder for cleaning and to take the parts to the kitchen. Employees at Langen Meats cleaned the meat grinder by removing a stainless steel hopper from the top of the machine. The hopper was a guard, which prevented contact with the cutting parts of the grinder. They then removed the various cutting pieces and took them back to a sink in the kitchen to be washed.

After washing the parts, Michael Bleh brought them back. Without checking to see if the grinder was unplugged, Leonard Bleh demonstrated to Michael how to reassemble the grinder. With the hopper top removed, he began installing the grinder's cutting pieces. Subsequently, Michael leaned forward and pointed his finger in the grinder near the cutting pieces. Simultaneously, his hip struck the grinder's front toggle switch, causing it to activate and amputate most of his left hand.

The grinder was manufactured by Biro in 1975. It included a magnetic interlock switch that was designed to make it impossible for the grinder to operate with the hopper top removed. Metallic reeds in the switch conducted electricity to the motor when the switch was near a magnet, permanently attached to the bottom of the hopper top. When the hopper top was removed from the body of the grinder, the reeds inside the switch lost contact with each other, thus preventing the flow of electricity to the grinder's motor. Replacing the top caused the reeds inside the switch to make contact with each other, allowing the motor to receive electricity.

Shortly after Michael's accident, Leonard Bleh and one of the owners of Langen Meats tested the meat grinder. They discovered that it would operate without the hopper top. Thompson, the company that regularly serviced the grinder, determined that the interlock switch was not operating properly and replaced it.

The Blehs contended that the malfunctioning switch, together with Biro's failure to provide a backup switch, a pilot light to warn that the grinder was powered, a guard for the toggle switch on the front of the grinder, or other safety features, rendered the grinder defective. The jury returned general verdicts in favor of both Biro and Thompson. It answered in the negative a special jury interrogatory that stated, "Was it proved by a preponderance of the evidence that the meat grinder manufactured by Defendant Biro was defective and, if so, that the defective condition of the meat grinder was a proximate cause of the [plaintiffs'] damages * * * ?" Subsequently, the Blehs filed motions for judgment notwithstanding the verdict and for a new trial, which the trial court overruled. This appeal followed.

■ In their first assignment of error, the Blehs contend that the jury's finding that the meat grinder manufactured by Biro was not defective, was against the manifest weight of the evidence. To recover compensatory damages in a product-liability case, the plaintiff must establish by a preponderance of the evidence (1) that a defect existed in the product manufactured and sold by the defendant, (2) that the defect existed at the time the product left the defendant's hands, and (3) that the defect was the proximate cause of the plaintiff's injuries or loss. R.C. 2307.74; *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 5–6, 523 N.E.2d 489, 493.

The Blehs relied on both the consumer-expectation and the risk/benefit test to prove that the meat grinder was defective, both of which were valid at the time of the accident and the trial. We note that in 1996, the legislature amended the product-liability statutes in Am. Sub. H.B. No. 350, which deleted the consumer-expectation test. *Perkins v. Wilkinson Sword, Inc.* (1998), 83 Ohio St.3d 507, 508, 700 N.E.2d 1247, 1248. But the Ohio Supreme Court declared Am. Sub. H.B. No. 350 unconstitutional in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062.

Under the consumer-expectation test, a product is defective in design if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. R.C. 2307.75(A)(2); *Perkins, supra,* at 508–509, 700 N.E.2d at 1248–1249; *State Farm,* 37 Ohio St.3d at 6, 523 N.E.2d at 494. The Blehs' expert testified that it was reasonably foreseeable for an individual to use the meat grinder without unplugging it, and that the failure to include more safety features rendered it more dangerous than an ordinary

consumer would expect. He acknowledged that he had never seen or tested the magnetic switch on this grinder.

■ Biro's expert testified that Biro's safety measures, including the hopper top that was bolted in place, the warnings that the hopper top should not be removed, and the safety interlock switch, sufficiently warned the consumer of the danger. He examined the meat grinder and testified that it was not more dangerous than an ordinary consumer would expect. The issue was one of credibility, and the credibility of witnesses, including experts, is for the jury to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus; *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271, 1281.

Under the risk/benefit test, a product is defective if, at the time it left the manufacturer's control, the foreseeable risks associated with its design exceeded the benefits associated with its design. R.C. 2307.75(A)(1); *Perkins,* 83 Ohio St.3d at 508–509, 700 N.E.2d at 1248–1249; *State Farm,* 37 Ohio St.3d at 7, 523 N.E.2d at 494–495. At trial, Biro's expert testified that the grinder's design conformed to all applicable engineering and manufacturing standards and that it was safe as designed.

■ In answering the interrogatory submitted to it by the court, the jury specifically found that the meat grinder was not defective. Civ.R. 49(B) provides that when the jury's answers to interrogatories are consistent with the general verdict, the court shall enter the appropriate judgment pursuant to Civ.R. 58. Here, the jury's answer to the interrogatory was consistent with the general verdict in favor of Biro. Therefore, the trial court was required to give effect to the jury's verdict by granting judgment in favor of Biro. See *Becker v. Bancohio Natl. Bank* (1985), 17 Ohio St.3d 158, 162, 17 OBR 360, 363, 478 N.E.2d 776, 781; *McNees v. Cincinnati St. Ry.* (1949), 152 Ohio St. 269, 40 O.O. 318, 89 N.E.2d 138, paragraph one of the syllabus; *Lathan v. Pennington* (Nov. 18, 1999), Cuyahoga App. No. 75198, unreported, 1999 WL 1044510. This court may set the judgment aside only if it is against the manifest weight of the evidence. See *Miller v. Paulson* (1994), 97 Ohio App.3d 217, 221, 646 N.E.2d 521, 523; *Lake Erie Boat Sales, Inc. v. Johnson* (1983), 11 Ohio App.3d 55, 57, 11 OBR 89, 90–91, 463 N.E.2d 70, 73; *In re Burdette* (1948), 83 Ohio App. 368, 371, 38 O.O. 429, 430, 83 N.E.2d 813, 815.

■ A reviewing court will not reverse a judgment supported by some competent, credible evidence going to all essential elements of the case as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 409–411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376

N.E.2d 578, syllabus. The determination of whether a product is defectively designed involves a balancing of numerous factual issues. *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.* (1995), 107 Ohio App.3d 218, 225, 668 N.E.2d 529, 533–534. In this case, the determination of whether the meat grinder was defective under either the consumer-expectation or the risk/benefit test was clearly for the jury to decide. See *Nadel v. Burger King Corp.* (1997), 119 Ohio App.3d 578, 587, 695 N.E.2d 1185, 1191. Competent, credible evidence supported its decision that the meat grinder was not defective. Therefore, this court will not reverse the judgment.

Finally, the Blehs rely on R.C. 2307.77 and 2307.71(N), which provide that a product is defective if it does not conform to a representation made by the manufacturer regarding its quality or safety. See *Gawloski v. Miller Brewing Co.* (1994), 96 Ohio App.3d 160, 164–165, 644 N.E.2d 731, 734. They contend that the undisputed evidence at trial showed that Biro expressly represented that the meat grinder would not operate with the hopper top removed. Because the meat grinder operated contrary to that representation, they argue that the grinder was defective.

However, the trial court, over the Blehs' objection, refused to instruct the jury on that issue because the evidence did not show that the Blehs or anyone at Langen Meats knew of that representation. They have not assigned as error the trial court's failure to instruct the jury on their claim of representation by the manufacturer, pursuant to R.C. 2307.77, and we, therefore, need not address that issue. See *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 202, 24 OBR 426, 429–430, 494 N.E.2d 1101, 1104; *C. Miller Chevrolet v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 301, 67 O.O.2d 358, 359–360, 313 N.E.2d 400, 403. Accordingly, we overrule the Blehs' first assignment of error.

We will address the Blehs' remaining assignments of error out of order. In their third assignment of error, the Blehs argue that the trial court erred in instructing the jury on the issue of superseding or intervening cause. They contend that Leonard and Michael Bleh's removal of the grinder's hopper top and their failure to check if the grinder was unplugged were foreseeable. In their fourth assignment of error, they contend that, to the extent the jury found that their actions were a superseding or intervening cause, its verdict was against the weight of the evidence. While we agree that actions by the Blehs were not a superseding or intervening cause, it is not reversible error.

In a product-liability case, the plaintiff must prove that a defect in the product was the proximate cause of the plaintiff's injury or loss. R.C. 2307.34; *State Farm, supra,* at 5–6, 523 N.E.2d at 493. An intervening event can break the causal connection between the defendant's act or omission and the plaintiff's

injury. To break the causal connection, the intervening act must be unforeseeable in light of all the facts and circumstances. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 619–620, 653 N.E.2d 661, 670–671; *Volter v. C. Schmidt Co., Inc.* (1991), 74 Ohio App.3d 36, 39, 598 N.E.2d 35, 37–38. The test for foreseeability is " 'whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor.' " *Queen City Terminals, supra,* at 619–620, 653 N.E.2d at 671, quoting *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 160, 6 OBR 209, 213–214, 451 N.E.2d 815, 819.

■ In this case, neither the Blehs' failure to make sure that the grinder was unplugged nor their removal of the hopper top was new and independent of any alleged design defect. Even Biro's president acknowledged that their actions were foreseeable. Therefore, those actions were not sufficient to break the chain of causation. An intervening cause is, more typically, for example, an intentional tort where a third party causes the harm and that harm is not within the scope of the risk created by the original actor's conduct. In that case, the third party's acts eliminate and make irrelevant the effect of the original act or omission. See *R.H. Macy & Co., Inc. v. Otis Elevator Co.* (1990), 51 Ohio St.3d 108, 111–112, 554 N.E.2d 1313, 1317; *Volter,* 74 Ohio App.3d at 39–40, 598 N.E.2d at 38–39. The trial court's instruction on intervening/superseding cause in the case was error.

■ However, the trial court did not instruct the jury on superseding or intervening cause as it related to the claims against Biro but only as to the Blehs' claims regarding the defendant, Thompson. In context with the jury's finding that the meat grinder was not defective, any error by the trial court in instructing the jury on superseding or intervening cause pertaining to their claims against Biro did not affect the Blehs' substantial rights, and the error was, therefore, harmless. See *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164, 17 O.O.3d 98, 100–101, 407 N.E.2d 490, 494; *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 44, 20 OBR 44, 46–47, 484 N.E.2d 712, 716. Accordingly, we overrule appellants' third and fourth assignments of error.

■ In their second assignment of error, the Blehs state that the verdict was against the manifest weight of the evidence because they presented overwhelming evidence that the proximate cause of the injuries was the defective condition of the meat grinder. Ultimately, the issue of the proximate causation of the injury in a product-liability case is a jury question. *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 151, 566 N.E.2d 1203, 1209; *Mark v. Mellott Mfg. Co., Inc.* (1995), 106 Ohio App.3d 571, 587, 666 N.E.2d 631, 641. In this case, the jury could have reasonably decided, based upon the evidence

presented at trial, that the sole proximate cause of the Blehs' injuries was the Blehs' failure to unplug the meat grinder before reassembling it and their improper removal of the hopper top, contrary to the manufacturer's warnings. Additionally, because the jury also found that the meat grinder was not defective, any error in regard to proximate cause was harmless. See *O'Brien*, 63 Ohio St.2d at 164, 17 O.O.3d at 100–101, 407 N.E.2d at 494; *McQueen*, 20 Ohio App.3d at 44, 20 OBR at 46–47, 484 N.E.2d at 716. Accordingly, we overrule the Blehs' second assignment of error.

In their fifth assignment of error, the Blehs contend that the trial court erred in failing to grant their motion for judgment notwithstanding the verdict or for a new trial. They again claim that they presented overwhelming evidence that the meat grinder was defective and that its defects caused the Blehs' injuries.

■ Construing the evidence at trial most strongly in Biro's favor, we hold that reasonable minds could reach different conclusions upon the evidence submitted as to whether the meat grinder was defective and whether any defect was the proximate cause of the Blehs' injuries. Substantial evidence existed to support Biro's defense, and, therefore, the trial court did not err in overruling the Blehs' motion for judgment notwithstanding the verdict. See *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679–680, 693 N.E.2d 271, 273; *Brokamp v. Mercy Hosp. Anderson* (1999), 132 Ohio App.3d 850, 871–872, 726 N.E.2d 594, 609–610. In reality, the Blehs are arguing that their evidence was more credible, but, in considering a motion for judgment notwithstanding the verdict, a court does not weigh the evidence or test the credibility of the witnesses. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus.

As to the Blehs' motion for a new trial, we have already held that the jury's verdict was not against the manifest weight of the evidence. Therefore, the trial court did not abuse its discretion in overruling the motion. See *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus; *Brokamp*, 132 Ohio App.3d at 872–873, 726 N.E.2d at 610; *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 183, 7 OBR 229, 229–231, 454 N.E.2d 976, 978. Accordingly, we overrule the Blehs' fifth assignment of error, and we affirm the trial court's judgment.

*Judgment affirmed.*

GORMAN, P.J., PAINTER and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.