## IMMORMINO

v.

## J & M POWERS, INC., d.b.a. McDonald's.

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CV 338891.

Decided Feb. 6, 1998.

*Mark Immormino,* for plaintiff Mary Lee Immormino.

*William M. Kovach,* for defendant J & M Powers, Inc., d.b.a. McDonald's.

THOMAS PATRICK CURRAN, Judge.

In this case, plaintiff Mary Lee Immormino alleges injury due to a hot water spill from a cup served by defendant J & M Powers, Inc., d.b.a. McDonald's fast food franchise. This case was originally filed on September 21, 1995, under case No. 295666. Plaintiff filed a voluntary dismissal on August 16, 1996. Plaintiff refiled the case on August 14, 1997, under case No. 338891. On September 8, 1997, defendant McDonald's filed a motion for summary judgment. On January

16, 1998, plaintiff Mary Lee Immormino filed a brief in opposition to defendant's motion for summary judgment. These pleadings are currently pending before this court.

The incident in question occurred on September 24, 1993, in Chesterland, Ohio. Plaintiff and her husband purchased several food products from the drive-thru window at McDonald's, including hot tea for the plaintiff herself. Plaintiff, who was a front-seat passenger, executed a series of maneuvers to steep her tea. As she was replacing the lid on the cup, she spilled the tea on her lap.

Plaintiff's complaint alleges three causes of action:

1. Defendant was negligent by serving a beverage that was too hot;

2. Defendant failed to warn consumers of the temperature of the beverage; and

3. Defendant placed the beverage in an unsafe container.

Defendant McDonald's has filed a motion for summary judgment. Defendant has submitted expert testimony by way of an affidavit establishing that the cup design and manufacture have met consumer expectations and were not otherwise defective. This evidence is uncontradicted and dispositive on that issue. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Also, according to the uncontradicted evidence, the cup contained the following legend: "CAUTION—CONTENTS MAY BE HOT" or "CAUTION—CONTENTS ARE HOT." In either event, the particular warning was printed in two locations on the cup.

In her brief in opposition to defendant's motion for summary judgment, plaintiff argues that the incident at issue occurred a full year before a nationally celebrated but unreported case against McDonald's by one Stella Liebeck of Albuquerque, New Mexico. Liebeck was injured when she spilled hot coffee on herself. She was awarded 2.9 million dollars.

Plaintiff herein argues that the effort by McDonald's to enhance its warnings following the Liebeck verdict is itself evidence of liability for failure to warn. But such evidence would be inadmissible under Evid.R. 407. The purpose of Evid.R. 407 is to enhance and encourage subsequent remedial measures as a matter of public policy. Admitting into evidence remedial measures as proof of prior misconduct would discourage remedial measures.

Evid.R. 407 therefore provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent

measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

In evaluating Evid.R. 407 in the context of an alleged failure-to-warn case, the feasibility of displaying more prominent warnings is ordinarily never placed into question. Certainly it is not an issue in the instant case.

 In a product liability case, where there are allegations of failure to warn, or failure to warn adequately, plaintiff may plead both negligence and strict liability. *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177. A product is defective due to an inadequate warning or instruction if the manufacturer knew or should have known of the danger and whether the warning allowed the consumer to use the product safely. *Crislip,* 52 Ohio St.3d at 257, 556 N.E.2d at 1183. It must be established that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. *Crislip,* 52 Ohio St.3d at 257, 556 N.E.2d at 1183. There is no liability unless it is proved that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. *Crislip,* 52 Ohio St.3d 251, 556 N.E.2d 1177. The standard placed upon the defendant in a strict liability claim premised upon an inadequate warning is identical to the standard imposed in a negligence claim based upon inadequate warning. *Crislip,* 52 Ohio St.3d 251, 556 N.E.2d 1177.

It is not clear whether the *Crislip* case conflicts with the legislative scheme on product liability law; and, if it is in conflict, whether the Supreme Court of Ohio would rule that the Ohio legislature has preempted the field of product liability law. Whether the instant causes of action are narrowed to the statutory scheme or are accorded a broader common-law base—in either event—this court rules that defendant McDonald's has fulfilled its duty to warn in the case *sub judice.*[1]

In this case, more prominent warnings of "hot" water are capable of being printed on a cup. Indeed, such warnings can be posted on windows and even displayed in flashing neon lights. One could even add recorded repetitive audible warnings at the drive-thru. The question for this court to determine is whether the warning posted on a cup is adequate as a matter of law; indeed, whether such a warning for "hot tea" is even necessary when the consumer is ordering "hot tea."

---

1. The product liability provisions of R.C. 2307.71 *et seq.* became effective January 5, 1988 for claims arising on and after that date. The *Crislip* decision was issued July 18, 1990, for an incident date of October 2, 1985. An unreported Third District Court of Appeals decision has held specifically that the legislature has eliminated negligence as a cause of action against a product manufacturer. See *Carrel v. Allied Products Corp.* (July 11, 1995), Marion App. No. 9–94–24, unreported, 1995 WL 423388, reversed (1997), 78 Ohio St.3d 284, 677 N.E.2d 795.

In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, the Ohio Supreme Court formally adopted Section 402A of the Restatement of the Law 2d, Torts. The court noted that "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort." *Temple*, 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. Comment *j* to Section 402A of the Restatement of the Law 2d, Torts, discusses the concept of failure to warn:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

In *Freas v. Prater Constr. Corp.* (1991), 60 Ohio St.3d 6, 573 N.E.2d 27, plaintiff's decedent was killed while dismantling a crane in the course of employment. Plaintiff's claim alleged several causes of action, including failure to warn of the crane's unsafe condition. In that case, there were numerous warnings listed in the manual concerning the crane's dangerous propensities. However, no warnings were placed on the crane's boom. The court found that the warnings in the manual were readable, conspicuous, and understandable. *Freas*, 60 Ohio St.3d at 10, 573 N.E.2d at 31. Furthermore, the court held that additional warnings on the boom itself would have been "beyond the 'precautions that a reasonable person' must take as demanded by *Crislip*." *Freas*, 60 Ohio St.3d 6, 573 N.E.2d 27, citing *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177.

█ This court holds that the warnings issued in the case *sub judice* were adequate under the circumstances. The cup in question contained bold warnings cautioning the holder about hot contents. In the case at hand, the consumer had ordered hot tea. The Oxford Encyclopedic English Dictionary (1991) describes "tea" as follows: "A drink made by infusing tea-leaves in *boiling water*" (Emphasis added.) This court holds as a matter of law that consumer expectations coupled with warnings on the cup established red lights ahead to the plaintiff that the tea might be too hot for the tongue; that the tea was capable of causing injury to other body parts; and that the consumer should expect potential injury from a spill of hot liquid.[2]

---

**2.** See *Nadel v. Burger King Corp.* (1997), 119 Ohio App.3d 578, 695 N.E.2d 1185. This is a spilled hot coffee case, overruling a summary judgment award for defendant, and holding that the consumer expectation test and/or the risk/benefit analysis test warranted questions for the jury. This decision is not binding upon this court and is, in any event, distinguishable by the presence in the case *sub judice* of warnings on the cup and the apparent lack of warnings on the cup in the *Nadel* case. See, also, the concurring and dissenting opinion in *Nadel* regarding obvious risks. 119 Ohio App.3d at 592–593, 695 N.E.2d at 1194–1195.

It might do well to recall that the concept of strict liability evolved from the notion that the manufacturer of a product is traditionally in the unique position to defend against claims of defect, whereas those injured from a defective product are typically in an inferior position in pursuing a cause of action requiring proof of negligence. To level the playing field, the common law gave birth to so-called product liability laws. These laws have generated complicated terms of art such as the "consumer expectation test" and the "risk/benefit analysis test." In addition, phrases such as "strict liability" and "breach of implied warranty" have been added to the mix. Yet the law should not lose sight of the commonly understood events of day-to-day life. A hot cup of tea is still a hot cup of tea; and the temperature at which water boils is uniformly the same in a given elevation from sea level. Given this constant, it seems to this court that the population of society is thoroughly aware from childhood of the dangers of a hot liquid spill. That the consumer should be given exquisitely detailed warnings of the extent of potential injury from such an event is not a factor that should form the basis of an action for money damages.

For the foregoing reasons, the defendant's motion for judgment in its favor and against the plaintiff is granted. This court holds that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law.

IT IS SO ORDERED. FINAL.

*Judgment accordingly.*