BOUHER et al., Appellants,

v.

ARAMARK SERVICES, INC., et al.; Food Equipment
Technologies Company, Appellee.

[Cite as *Bouher v. Aramark Servs., Inc.*, 181 Ohio App.3d 599, 2009-Ohio-1597.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080535.

Decided April 3, 2009.

Manley Burke, Mathew W. Fellerhoff, and Daniel J. McCarthy, for appellants.

Faulkner & Tepe, L.L.P., John C. Scott, and Jason H. Meyer, for appellee.

---

DINKELACKER, Judge.

{¶ 1} Plaintiff-appellants, Christina and Michael Bouher, filed a product-liability suit against several defendants, including defendant-appellee, Food Equipment Technologies Company ("FETCO"), after Christina was severely burned while picking up a cup of hot water. The trial court granted summary judgment in favor of FETCO. We affirm the trial court's judgment.

## I. Facts and Procedure

{¶ 2} The record shows that on the day she was injured, Christina went to her employer's cafeteria to get hot water to make a cup of tea as she had done almost every morning of her long-time employment there. The cafeteria used a FETCO coffee maker, with a separate dispenser for hot water. To dispense the water, the user had to lift up a red handle, labeled "LIFT FOR HOT WATER."

{¶ 3} Christina dispensed the water into the same type of polystyrene cup that she had obtained from the cafeteria every day. She took the cup to the FETCO coffee maker and filled it with hot water from the spigot. She did not overfill it, and she did not remember it bubbling or boiling. She then put a lid on the cup and sealed it. No hot water leaked or splashed.

{¶ 4} She took the cup and began walking out of the cafeteria with the intent of brewing the tea at her desk, as she did every morning. As she stopped briefly to talk to a coworker, she set the cup on a wooden counter. She talked for approximately two minutes. Then, as she picked up the cup with her left hand, it felt soft. Her thumb immediately went through the cup and became stuck.

{¶ 5} She felt intense pain, and she started shaking the cup to free her thumb. The lid popped off, and the cup's contents splashed on her right arm, right hand, face, eye, and forehead. She suffered second-degree burns, which required treatment, including painful debridement sessions. She was left with scarring and sensitive skin that she must keep out of direct sunlight.

{¶ 6} The FETCO coffee maker dispensed the same water that it used to brew coffee out of the hot-water spigot. The water temperature inside the coffee maker's tank was set to 205 degrees Fahrenheit, although the water would cool slightly coming from the tank into the tube for the hot-water dispenser and going into the cup. The industry standard for brewing tea is 208 to 212 degrees, which is slightly higher than for brewing coffee.

{¶ 7} In their complaint, the Bouhers alleged that the FETCO coffee maker was defectively designed and that FETCO had failed to adequately warn of its inherent danger. The trial court granted FETCO's motion for summary judgment on all of the Bouhers' claims against it. This appeal followed.

{¶ 8} In their sole assignment of error, the Bouhers state that the trial court erred in granting summary judgment in favor of FETCO. They argue that under this court's decision in *Nadel v. Burger King Corp.*,[1] material issues of fact exist for trial. This assignment of error is not well taken. We hold that *Nadel* is no longer viable precedent, and we therefore overrule it.

## II. Design Defect

{¶ 9} A manufacturer is liable on a product-liability claim if the claimant establishes that a product is defective in design or formulation or defective due to inadequate warning or instruction.[2] The Bouhers argue that the product was defective in design under the "consumer expectations" test. Though a subsequent statutory amendment deleted this test from the definition of a defectively designed product, the product in this case was designed before January 1997. Therefore, the consumer-expectation test was still applicable.[3] Under the consumer-expectation test, a product is defective in design if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.[4]

{¶ 10} In *Nadel*, a child suffered second-degree burns from spilled coffee that a restaurant had served at 175 degrees. The trial court had granted summary judgment to the restaurant. This court reversed the trial court's judgment.

{¶ 11} In regard to the consumer-expectation test, we stated, "Here, the question is not whether the Nadels expected the coffee to be hot, but rather *how hot* they, or a reasonable consumer in their shoes, expected the coffee to be. If the Nadels could show that a reasonable consumer would find that coffee brewed at one-hundred-seventy-five degrees was unreasonably and excessively hot, and therefore that the coffee failed to be as safe as an ordinary consumer would expect, then a question of fact existed, and summary judgment was inappropri-

---

1. (1997), 119 Ohio App.3d 578, 695 N.E.2d 1185.

2. Former R.C. 2307.73, 142 Ohio Laws Part I, 1661, 1667–1678.

3. See R.C. 29307.75(A); Former R.C. 2307.75(A)(2), 142 Ohio Laws, Part I, 1661, 1678–1679; *Bleh v. Biro Mfg. Co.* (2001), 142 Ohio App.3d 434, 438, 756 N.E.2d 121; *Nadel*, 119 Ohio App.3d at 587, 695 N.E.2d 1185; *Hisrich v. Volvo Cars of N. Am., Inc.* (C.A.6, 2000), 226 F.3d 445, 448.

4. Former R.C. 2307.75(A)(2); *Bleh*, 142 Ohio App.3d at 438, 756 N.E.2d 121.

ate."[5]  We went on to state, "The fact that the coffee caused second degree burns is sufficient by itself to raise a factual issue whether the coffee was unreasonably hot, and therefore it is presently sufficient to defeat a motion for summary judgment."[6]

{¶ 12} We now believe that this language is far too broad.  We are inclined to agree with Judge Hildebrandt's well-reasoned dissent, and we adopt its reasoning.  He stated, "The fact that a product may cause injury does not mean that the product is defective" under either prong of the defective-design section of Ohio's Products Liability Act.  "A manufacturer need not make its product accident-proof or foolproof.  It is 'not an insurer that [its] product is, from a design viewpoint, incapable of producing injury.' "[7]

{¶ 13} He pointed out that the majority's decision essentially precluded summary judgment every time a plaintiff asserted that a given product had been defectively designed and that the plaintiff was injured by it.[8]  We agree.

{¶ 14} In this case, the Bouhers presented no evidence to show that material issues of fact existed as to whether the coffee maker was defectively designed.  To the contrary, the evidence showed that it did exactly what any consumer would expect it to do.  It produced water from its hot-water spigot at a temperature that was hot enough to brew tea.  Actually, the water was slightly cooler than the industry standard to brew tea.  Though we understand and sympathize with the severity of Christina's injuries, those injuries, do not, by themselves, mean that the coffee maker was defective.  "[T]he law should not lose sight of the commonly understood events of day-to-day life.  A hot cup of tea is still a hot cup of tea."[9]

{¶ 15} We find no issues of material fact.  Construing the evidence most strongly in the Bouhers' favor, we hold that reasonable minds can come to but one conclusion—that the coffee maker was not defectively designed and that FETCO was entitled to judgment as a matter of law.  Consequently, the trial court did not err in granting summary judgment in favor of FETCO on the Bouhers' claim for design defects.[10]

---

5.  (Emphasis sic.)  *Nadel,* 119 Ohio App.3d at 587, 695 N.E.2d 1185.

6.  Id. at 588, 695 N.E.2d 1185.

7.  (Citations omitted.)  Id. at 592, 695 N.E.2d 1185 (Hildebrandt, J., concurring in part and dissenting in part), quoting *Gossett v. Chrysler Corp.* (C.A.6, 1966), 359 F.2d 84, 87.

8.  Id.

9.  *Immormino v. J & M Powers, Inc.* (1998), 91 Ohio Misc.2d 198, 203, 698 N.E.2d 516.

10.  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267; *Greene v. Whiteside,* 1st Dist. No. C–080379, 2009-Ohio-741, 2009 WL 418732, ¶ 23; *Stinespring v. Natorp Garden Stores* (1998), 127 Ohio App.3d 213, 215, 711 N.E.2d 1104.

### III.   Failure to Warn

{¶ 16} The Bouhers also argue that the coffee maker was defective because it did not have adequate warning of a danger known to the manufacturer.[11]   They contend that the red spigot cautioning that the water was "hot" was inadequate to warn the consumer of the hazards of water that was approximately 200 degrees.

{¶ 17} In *Nadel*, we noted in the majority opinion that the evidence showed that the plaintiffs knew that the coffee was hot.   Nevertheless, we continued, "this knowledge is not dispositive, because the issue is not whether the coffee was hot or expected to be hot, but whether the coffee was so exceedingly hot that serving it without a warning of unforeseen danger was unreasonable.   We believe that it is a question of fact whether second-degree burns [resulting] from spilled coffee is an unforeseen danger * * *.   We cannot conclude from the evidence before us that the hot coffee posed such an obvious danger of severe burns that the Nadels were aware of such danger."[12]

{¶ 18} Again, this language is way too broad.   Whether a warning is adequate or even necessary will not always be an issue of fact.   Both the current and earlier versions of the products-liability statutes state that "[a] product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge."[13]

{¶ 19} In his dissent in *Nadel*, Judge Hildebrandt said that summary judgment in favor of the restaurant was proper because the risk associated with hot coffee is open and obvious.[14]   He went on to say, "It is not the severity of a specific injury that constitutes the open and obvious risk; the open and obvious risk is the 'danger or potentiality for danger' that a product possesses, regardless of the innumerable degrees of severity of injury which might occur."[15]

{¶ 20} In the present case, burns from water hot enough to brew tea are an open and obvious risk.   Again, "[a] hot cup of tea is still a hot cup of tea; and the temperature at which water boils is uniformly the same in a given elevation from sea level.   Given this constant, it seems * * * that the population of society is thoroughly aware from childhood of the dangers of a hot liquid spill.   That the

---

11.   See former R.C. 2307.76(A), 142 Ohio Laws, Part I, 1661, 1678, 1680–1681.

12.   *Nadel*, 119 Ohio App.3d at 588, 695 N.E.2d 1185.

13.   R.C. 2307.76(B);  former R.C. 2307.76(B), 142 Ohio Laws, Part I, 1661, 1681.

14.   *Nadel*, 119 Ohio App.3d at 592, 695 N.E.2d 1185 (Hildebrandt, J., concurring in part and dissenting in part).

15.   Id., quoting Restatement of the Law 2d, Torts (1965), 3533, Section 402A, Comment j.

consumer should be given exquisitely detailed warnings of the extent of potential injury from such an event is not a factor that should form the basis of an action for money damages."[16]

{¶ 21} The spigot on the hot-water dispenser told the user that the water coming out of that spigot was hot. This warning was adequate to put the user on notice of the risk of potential injury.

{¶ 22} We find no issues of material fact. Construing the evidence most strongly in the Bouhers' favor, we hold that reasonable minds could have come to but one conclusion—that the coffee maker was not defective due to a failure to warn—and that FETCO was entitled to judgment as a matter of law. Consequently, the trial court did not err in granting summary judgment in FETCO's favor on the Bouhers' failure-to-warn claim.[17] We overrule the Bouhers' sole assignment of error.

### IV. Stare Decisis

{¶ 23} We do not overrule *Nadel* lightly. The doctrine of stare decisis provides continuity and predictability in our legal system. It is " 'of fundamental importance to the rule of law.' "[18]

{¶ 24} Nevertheless, an appellate court "not only has the right, but is entrusted with the duty to examine its former decisions and, when reconciliation is impossible, to discard its former errors."[19] Consequently, we may overrule our prior decision when (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision; (2) the decision defies practical workability; and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it.[20]

{¶ 25} Our previous discussion of *Nadel* demonstrates why it was wrongly decided and why it defies practical workability, thus satisfying the first two prongs of the test. As to the third prong, we analyze whether the precedent " 'has become so embedded, so accepted, so fundamental, to everyone's expecta-

---

16. *Immormino,* 91 Ohio Misc.2d at 203, 698 N.E.2d 516.

17. See *Temple,* 50 Ohio St.2d at 327, 4 O.O.3d 466, 364 N.E.2d 267; *Greene,* 2009-Ohio-741, 2009 WL 418732, at ¶ 23; *Stinespring,* 127 Ohio App.3d at 215, 711 N.E.2d 1104.

18. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 43–44.

19. Id. at ¶ 43; *State v. Burton,* 10th Dist. No. 06AP–690, 2007-Ohio-1941, 2007 WL 1196579, ¶ 22.

20. *Galatis,* at paragraph one of the syllabus; *Burton,* at ¶ 22.

tions that to change it would produce not just readjustments, but practical real-world dislocations.' "[21]

{¶ 26} *Nadel* is not so embedded or accepted that to change it would cause chaos.[22] To the contrary, it has been criticized and distinguished on several occasions.[23] " 'It does no violence to the legal doctrine of stare decisis to right that which is clearly wrong. It serves no valid public purpose to allow incorrect opinions to remain in the body of our law.' "[24]

## V. Summary

{¶ 27} In sum, we overrule *Nadel* and hold that it is no longer valid precedent. We also hold that the trial court did not err in granting FETCO's motion for summary judgment on the Bouhers' claims against it. We overrule the Bouhers' assignment of error and affirm the trial court's judgment.

Judgment affirmed.

HENDON, P.J., and CUNNINGHAM, J., concur.

---

21. *Galatis*, at ¶ 58, quoting *Robinson v. Detroit* (2000), 462 Mich. 439, 466, 613 N.W.2d 307.

22. Id.

23. See, e.g., *Immormino*, 91 Ohio Misc.2d at 202, 698 N.E.2d 516; *Gessman v. Superamerica Group, Inc.* (May 28, 1998), S.D.Ohio No. C–3–97–89; *Kessel v. Stansfield Vending, Inc.* (2006), 291 Wis.2d 504, 522–523, 714 N.W.2d 206; *Olliver v. Heavenly Bagels, Inc.* (2001), 189 Misc.2d 125, 127–128, 729 N.Y.S.2d 611.

24. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 60, quoting *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 300, 581 N.E.2d 1086; *State v. Certain*, 4th Dist. No. 07CA3003, 2009-Ohio-148, 2009 WL 104637, ¶ 19.