[Cite as *State v. Reese*, 2019-Ohio-3680.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180126 |
| | | C-180412 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1703108 |
| vs. | : | |
| | | *O P I N I O N.* |
| THOMAS REESE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 13, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Following guilty pleas, defendant-appellant Thomas Reese was convicted of 15 counts of burglary under R.C. 2911.12(A) and one count of receiving stolen property under R.C. 2913.51(A). Under the terms of an agreed sentence, the trial court sentenced him to a total of 14 years in prison. He was also ordered to pay costs and fees for appointed counsel.

{¶2} Reese has filed a timely appeal from those convictions. He presents two assignments of error for review. We find some merit in his second assignment of error relating to the imposition of fees for appointed counsel. Therefore, we reverse that part of the trial court's judgment imposing those fees. We find no merit in his remaining arguments, and we affirm the trial court's judgment in all other respects.

### I. Factual Background

{¶3} The record shows that 30 delinquency complaints were filed against Reese in the Hamilton County Juvenile Court relating to incidents that occurred between July 17, 2016, and October 5, 2016. The offenses involved were primarily burglaries, along with other property offenses.

{¶4} Subsequently, the state filed motions asking the court to relinquish jurisdiction to the common pleas court under Juv.R. 30. The trial court held a probable-cause hearing on all of the complaints and determined that probable cause existed that Reese had committed the charged offenses.

{¶5} At an amenability hearing, the court heard from numerous victims of the offenses, who told the court about the items stolen from their homes. Many of the victims were home asleep during the burglaries and discussed the fear caused by having an intruder in their home while they slept.

{¶6}   The court heard testimony from two psychologists, Dr. Kathleen Hart and Dr. Daniel Davis.  Both testified that they believed that Reese was amenable to treatment in the juvenile system.  They discussed his early home life, in which he had little supervision.  His mother was a heroin addict, who could not provide even basic care to Reese and his siblings.  At a young age, Reese's father taught him how to steal.  Reese also observed his father beat his mother.  Subsequently, his father went to prison, where he remained for most of Reese's life.  Later, Reese's mother's boyfriend also showed him how to steal.

{¶7}   After previous delinquency complaints, the Hamilton County Department of Job and Family Services ("HCJFS") became involved in Reese's care and created a safety plan.  HCJFS was awarded custody of Reese, and placed him in a residential treatment facility in Gallia County.  After two weeks, he ran away from the facility.  He returned to Hamilton County, where he committed new offenses.

{¶8}   After he was detained on the new offenses, he was placed in a detention center.  He responded positively to the structure of the center and cooperated with the staff members, the other residents, and the facility rules.  He participated in all activities, and he was pleasant and courteous.  Nevertheless, he was also the target of bullying in the facility and had difficulty managing the stress of detention.

{¶9}   Both psychologists testified that Reese had intellectual and cognitive disabilities.  In particular, he had language deficits, which prevented him from understanding what others said to him and expressing himself.  Those deficits had caused previous delinquency complaints to be dismissed because he was found not competent to stand trial based on his lack of understanding of the judicial system.  Eventually, though, he was found to be competent in relation to the 30 charges involved in the amenability hearing.

{¶10} Though he was almost 18 years of age, with only three years left to spend in the juvenile system, both psychologists believed he could still be rehabilitated in that system. Hart acknowledged that in making her recommendation, she did not factor in Reese's risk to the public at the time of the hearing or his potential risk to the public upon his release from the juvenile system. Although she felt he would respond well to treatment, she was not willing to predict whether he could function in the community after three years of treatment. Her testing showed that he had a moderate risk of future violent or criminal behavior without intervention, but that he would benefit from intensive rehabilitation services.

{¶11} Similarly, Davis administered tests to determine Reese's future risk for dangerousness and found him to be in the "middle range." He noted that Reese had not engaged in violent behavior, but that the escalating seriousness of his offenses was concerning. When asked if Reese could be completely rehabilitated within the three years he would be in the juvenile system, Davis stated that he did not know. He said, "I believe that there are things that speak towards his ability that can and there are things that speak clearly against that, which is why I said moderate to high as opposed to high." He, too, believed that Reese would respond well to intensive treatment.

{¶12} The juvenile court relinquished jurisdiction and transferred the case to adult court. Reese was indicted on 18 counts of burglary, four counts of theft, three counts of attempted burglary, two counts of receiving stolen property, and one count of safecracking. Under a plea agreement, he pleaded guilty to 16 of the charges and was sentenced. This appeal followed.

## II. Discretionary Bindover

{¶13} In his first assignment of error, Reese contends that the trial court abused its discretion in transferring jurisdiction to the common pleas court. He argues that the juvenile court ignored expert reports indicating that he was amenable to treatment in the juvenile system and failed to properly weigh the factors against transfer. He also argues that the court's findings on some of the factors were not supported by the record. This assignment of error is not well taken.

{¶14} R.C. 2152.12(B) governs discretionary bindovers. It permits the juvenile court to transfer to the common pleas court a case alleging a juvenile has committed an act that would be a felony if committed by an adult if the juvenile court finds that (1) at the time of the offense, the juvenile was 14 or older, (2) probable cause exists that the juvenile committed the act charged, and (3) the juvenile is not amenable to care or rehabilitation in the juvenile system. *State v. Evans*, 1st Dist. Hamilton No. C-170420, 2018-Ohio-3129, ¶ 30; *State v. McKinney*, 2015-Ohio-4398, 46 N.E.3d 179, ¶ 33 (1st Dist.). Because it is highly individualized and inherently fact-based, a juvenile court's amenability determination is reviewed under an abuse-of-discretion standard. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 14; *McKinney* at ¶ 34.

{¶15} When determining if a child is amenable to treatment in the juvenile system, the juvenile court must consider the factors weighing in favor of and against transfer set forth in R.C. 2152.12(D) and (E), as well as any other relevant factor. *Evans* at ¶ 31; *State v. Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, ¶ 14. The court has discretion to determine how much weight to give to any one factor, and it need only identify those factors that were applicable and that it weighed in making its determination. *Evans* at ¶ 31; *Marshall* at ¶ 15. "As long as the court

considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, [this court] cannot conclude that the trial court abused its discretion in deciding whether to transfer jurisdiction." *Marshall* at ¶ 15, quoting *State v. West*, 167 Ohio App.3d 598, 2006-Ohio-3518, 856 N.E.2d 285, ¶ 10 (4th Dist.).

{¶16}  At the end of the amenability hearing, the juvenile court discussed all of the applicable factors.  The court discussed the harm to the victims, some of whom were elderly and many of whom were home sleeping while Reese broke into their homes.  It considered the number and severity of the offenses, that they involved organized criminal activity, that Reese was awaiting adjudication on other charges at the time of some of the offenses, that he ran away from a secure facility and came back to this area to commit more offenses, that his criminal behavior was sophisticated despite his cognitive deficits, that because he was almost 18 at the time of hearing there was little time for rehabilitation, that he was a principal offender in the offenses even though he worked with others, that the victims did not induce or facilitate the offenses, and that Reese did not act under provocation.  The court determined based on the sophistication of the criminal acts and Reese's status as a principal offender, that he was mature enough for the transfer, and based on his history and the increasing seriousness of his offenses, he was a safety risk to the community.

{¶17} The court clearly considered the experts' reports and did not arbitrarily ignore them.  In fact, it specifically stated that "we have very, very credible physicians that speak to his emotional, physical and psychological capabilities."  But the court disagreed with the experts' conclusions.  It noted Reese's low cognitive ability as described by the experts, but found that "there's a significant separation

6

between his criminogenic behaviors and his other behaviors." Additionally, both experts declined to state whether Reese would be rehabilitated in three years when he would be released from the juvenile system. The court stated that "[n]either doctor is capable of opining anything to near comfort levels for this Court in regard to that specific issue[.]"

{¶18} A juvenile court is not bound by any expert opinion, and may assign any weight to the expert opinion that it deems appropriate. *State v. Everhardt*, 3d Dist. Hancock No. 5-17-25, 2018-Ohio-1252, ¶ 43; *State v Easley*, 10th Dist. Franklin Nos. 16AP-9 and 16AP-10, 2016-Ohio-7271, ¶ 15. This court has held that the juvenile court is entitled to disagree with the opinion of a medical expert and may take into account the severity of the offenses. *Evans*, 1st Dist. Hamilton No. C-170420, 2018-Ohio-3129, at ¶ 33; *Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, at ¶ 21. Reese argues that we should overrule our cases on that point. We see no reason to do so. To hold otherwise would constrain judicial discretion and allow expert testimony to usurp the function of the juvenile court, which is the ultimate decision maker.

{¶19} Further, the Ohio Supreme Court has stated that a court of appeals may overrule its prior decisions when (1) the decision was wrongly decided at that time, or changes in circumstances no longer justify continued adherence to the decision, (2) the decision defies practical workability, and (3) abandoning the precedent would not create an undue hardship for those who have relied upon it. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus; *Bouher v. Aramark Servs., Inc.*, 181 Ohio App.3d 599, 2009-Ohio-1597, 910 N.E.2d 40, ¶ 24 (1st Dist.). Reese has not shown that any of these criteria are met.

{¶20} Finally, Reese argues that the record does not support the court's findings. Among other things, he argues that the evidence did not support a finding under R.C. 2152.12(D)(5) that he had a firearm on or about his person or under his control at the time of the act charged, and that during the commission of the act charged, he allegedly used or displayed the firearm, brandished the firearm, or indicated that he possessed a firearm. The court noted that that during one burglary of a business, he was seen with a firearm on a surveillance video. But it also noted that none of the other charges involved a firearm. Therefore, it did not make a finding that Reese possessed a firearm.

{¶21} Reese also argues that the evidence did not support the court's finding under R.C. 2152.12(A)(4) that the act was committed for hire or as a part of a gang or other criminal activity. In *State v. Marshall*, the juvenile and his codefendants were involved in the aggravated robbery of three Hispanic individuals and an aggravated robbery of a UC student. We found that sufficient evidence supported the organized-criminal-activity factor. We stated that a defendant's participation in an aggravated robbery along with one or more codefendants is sufficient to find the incident occurred as part of organized criminal activity. *See Marshall*, 1st Dist. Hamilton No. C-150383, 2016-Ohio-3184, at ¶ 22, citing *State v. Morgan*, 10th Dist. Franklin No. 13AP-620, 2014-Ohio-5661, ¶ 38.

{¶22} In this case, the evidence showed that Reese and his coconspirators went looking for cars they liked. If the keys were not available, they broke into a house where they thought the keys might be and stole them and other items. They then stole the cars and went for joy rides, often leaving the cars damaged or totaled. This evidence was sufficient to support the organized-criminal-activity factor. *See State v. Turner*, 6th Dist. Lucas No. L-16-1132, 2017-Ohio-995, ¶ 15-18.

8

{¶23} In sum the record supports the juvenile court's findings. The juvenile court was in the best position to weigh the factors. It conducted a thorough analysis and we cannot say that its decision was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. *See State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 130. Therefore, we overrule Reese's first assignment of error.

### III. Imposition of Costs and Appointed Counsel Fees

{¶24} In his second assignment of error, Reese contends that the trial court erred in imposing financial sanctions as part of his sentence. He argues that the court failed to consider his future ability to pay financial sanctions under R.C. 2929.18. We find merit in this assignment of error only as it relates to the imposition of appointed-counsel fees.

{¶25} This case involves an agreed sentence. Under former R.C. 2953.08(D)(1), a sentence that has been recommended jointly by the defendant and the prosecution and imposed by a sentencing judge is not subject to appellate review if it is authorized by law. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 16; *State v. Williams*, 1st Dist. Hamilton No. C-150320, 2016-Ohio-376, ¶ 4. A sentence is authorized by law and is not appealable only if it comports with all mandatory sentencing provisions. *Underwood* at paragraph two of the syllabus.

{¶26} R.C. 2947.23 requires a court to assess costs in all criminal cases even if the defendant is indigent. *State v. Braden*, Slip Opinion No. 2018-Ohio-5079, ¶ 14; *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. In other words, the statute requires the court to assess costs as a part of a criminal sentence.

*State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 3. Because the imposition of the costs was a mandatory part of the agreed sentence, we hold that we have no jurisdiction to review that part of the sentence under former R.C. 2953.08(D)(1).

{¶27} Finally, Reese argues that appointed-counsel fees cannot be taxed as part of the costs of a criminal prosecution. Former R.C. 2953.08(D)(1) does not preclude us from reviewing this issue because we hold that the fees are not part of the sentence.

{¶28} Former R.C. 2941.51(D) stated that the fees for appointed counsel, "shall not be taxed as part of the costs and shall be paid by the county." But, it further states that "if the person represented has, or reasonably may be expected to have, the means to meet some part of the costs of services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay."

{¶29} Most courts that have addressed the issue have stated that R.C. 2941.51(D) does not authorize the assessment of attorney fees as part of a criminal defendant's sentence. Rather, after the court determines the defendant's ability to pay, it must enter a separate civil judgment for the fees or the part that the defendant has the ability to pay. *See State v. Springs*, 2015-Ohio-5016, 53 N.E.3d 804, ¶ 7-13 (2d Dist.); *State v. Perry*, 12th Dist. Preble No. CA2004-11-016, 2005-Ohio-6041, ¶ 20; *State v. Crenshaw*, 145 Ohio App.3d 86, 90, 761 N.E.2d 1121 (8th Dist.2001). The court may determine the defendant's ability to pay and determine the amount of fees in the criminal case and enter a separate judgment in that amount that may be collected civilly. *Springs* at ¶ 10. *But see Perry* at ¶ 21 (the trial court must only

make an affirmative determination on the record that the accused has the ability to pay; entry of separate civil judgment is not required).

{¶30} We follow the majority of cases on this issue. The trial court had no authority to tax the appointed-counsel fees as costs. *See Springs* at ¶ 9. Further, it made no determination of Reese's current or future ability to pay. Therefore, the trial court erred in assessing appointed-counsel fees as costs in the criminal case.

{¶31} We sustain Reese's second assignment of error as it relates to the fees for appointed counsel. We reverse that portion of the trial court's judgment ordering Reese to pay appointed-counsel fees, and we remand the cause to the trial court to determine his ability to pay the counsel fees and, if the court finds he has the ability to pay, to enter a separate civil judgment. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

MYERS, P.J., and BERGERON, J., concur.

Please note:
The court has recorded its own entry this date.