[Cite as *In re T.S.*, 2021-Ohio-1889.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE:  T.S.

:

:

:

:

APPEAL NO. C-200267
TRIAL NO. 20-881Z

*O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  June 4, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Appellant State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender,  for Appellee T.S.

**MYERS, Presiding Judge.**

{¶1}     In this appeal, the state of Ohio challenges the decision of the juvenile court dismissing a delinquency action against appellee T.S.  The complaint alleged that when he was 17 years old, T.S. engaged in behavior that would have constituted felonious assault and two firearm specifications if he had been an adult.

{¶2}     The state filed a motion for relinquishment of jurisdiction.  Following a hearing, the juvenile court determined that no probable cause existed to believe that T.S. committed the offenses and dismissed the complaint.

{¶3}     The state now appeals.  Because the state presented sufficient evidence of probable cause, we reverse the juvenile court's judgment.

*The Evidence at the Bindover Hearing*

{¶4}     At the bindover hearing, Cincinnati Police Detective Robert Bohl testified that on February 17, 2020, he was called to investigate a shooting that occurred on Hopple Street in Cincinnati.  He interviewed T.S., who had been injured in the shooting.  According to the detective:

> I just asked [T.S.] what happened.  He stated that he was driving a car
> on Hopple Street when a car pulled up behind him.  Shots were fired.
> He got out and ran.  As he was running, he admitted that he was
> shooting back at them as well.

T.S. stated that he used a Glock gun.  T.S. reported that after he was shot, he ditched the gun before running into a Wendy's restaurant.

{¶5}     Meanwhile, a man named Terrell Grigsby called the police to report that he had been involved in a shootout.  When Detective Bohl interviewed him, Grigsby stated that the previous night, two unknown men had beaten him up and had stolen his Glock gun and his vehicle.  Grigbsy said that he later was with William Cook when they saw Grigsby's stolen vehicle driving on Hopple Street, so they pulled

up behind it and yelled at the driver to get out of the vehicle. When the driver refused, Grigsby pulled out his rifle and fired one round into the air to intimidate him. Grigsby said that the driver got out of the vehicle and started shooting back at him. According to the detective, Grigsby said that "[w]hen the driver of the vehicle, [T.S.], got out and started shooting back, that's when Mr. Cook got out of the vehicle and started returning fire as well."

{¶6} Detective Bohl also interviewed William Cook who stated that he had been with Grigsby when they saw the stolen vehicle and pulled up behind it. Cook reported that Grigsby pulled out a rifle and fired three shots into the air. Then the driver of the stolen vehicle got out and started shooting, so Cook returned fire with his 9 mm gun.

{¶7} T.S. sustained at least one gunshot wound in the shooting, but neither Cook nor Grigsby was injured.

{¶8} Police recovered a 40-caliber Glock gun from the Wendy's restaurant. The gun was test-fired and found to be operable. Police found multiple gun shell casings scattered on the ground at the crime scene, including 9 mm and 7.62-caliber casings, which matched the guns that Cook and Grigsby fired. Police recovered no 40-caliber casings matching the Glock gun fired by T.S. Detective Bohl explained:

> We didn't recover any [40-caliber] casings, but, I mean, by the time we
> got there, cars were driving all over the place. It was quite a large
> crime scene. We canvassed the area, didn't find any.

{¶9} At the conclusion of the hearing, the juvenile court placed of record an entry stating, "Evidence presented. The evidence is insufficient. Probable cause not found." After finding no probable cause, the juvenile court dismissed the complaint. This appeal followed.

*Probable Cause*

**{¶10}** In a single assignment of error, the state argues that the juvenile court erred by dismissing the complaint. The state contends that the court erroneously found that there was insufficient evidence to support a finding of probable cause.

**{¶11}** R.C. 2152.12(B) governs discretionary bindovers. It allows the juvenile court to transfer to the common pleas court a case alleging a juvenile has committed an act that would be a felony if committed by an adult if the juvenile court finds that (1) the child was 14 or older at the time of the charged offense, (2) probable cause exists that the juvenile committed the charged offense, and (3) the juvenile is not amenable to care or rehabilitation in the juvenile system. R.C. 2152.12(B); *State v. Reese*, 1st Dist. Hamilton Nos. C-180126 and C-180412, 2019-Ohio-3680, ¶ 14.

**{¶12}** The state's burden in a bindover hearing is to provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the charged offense. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 42, citing *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001). "[B]ut that evidence does not have to be unassailable." *Id.* at ¶ 46. "In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but *need not* provide evidence proving guilt beyond a reasonable doubt." (Emphasis sic.) *Id.* at ¶ 42, quoting *Iacona* at 93. Whether the state has presented sufficient evidence to demonstrate probable cause to believe the juvenile has committed the act charged is a question of law that an appellate court reviews de novo. *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 13, citing *In re A.J.S.* at ¶ 47.

**{¶13}** To establish probable cause that T.S. committed felonious assault, the state had the burden to provide credible evidence that T.S. knowingly caused or attempted to cause physical harm to William Cook by means of a deadly weapon. *See* R.C. 2903.11(A)(2); *In re A.J.S.* at ¶ 42. An operable firearm is a deadly weapon. *See*

*State v. Scott*, 6th Dist. Sandusky No. S-19-030, 2020-Ohio-4854, ¶ 51; R.C. 2923.11(A) and (B)(1). For the firearm specifications, the state had to provide credible evidence that T.S. had the firearm on or about his person or under his control while committing the felonious-assault offense, and that he displayed, brandished, indicated possession of, or used the firearm to facilitate the offense. *See* R.C. 2941.141(A) and 2941.145(A).

{¶14} The evidence presented at the bindover hearing was sufficient to support a finding of probable cause that T.S. knowingly attempted to cause physical harm to Cook by means of an operable firearm. T.S. admitted to the detective that he fired a gun at the people who got out of the car behind him, and the gun was recovered by police and found to be operable. In addition, Cook and Grigsby told the detective that the driver of the car in front of them began to shoot at them after Grigsby fired a warning shot or shots. Because the state met its burden to establish probable cause that T.S. engaged in conduct that would have constituted felonious assault and the firearm specifications if he had been an adult, the juvenile court erred by finding no probable cause to believe that T.S. had committed the charged acts.

{¶15} While it is true that the trial court orally stated at the hearing, "[W]ith regard to the felonious assault charge, whether the shots were fired in the air or not, he fired in self defense," T.S. urges us to ignore this because it was not included in the court's entry. Rather, T.S. asks us to focus only on whether there was sufficient evidence to support the elements of felonious assault. As discussed above, we find there was probable cause to believe T.S. engaged in conduct that would have constituted felonious assault if he had been an adult.

{¶16} We reverse the juvenile court's judgment. This case is remanded to the juvenile court to set T.S.'s case for an amenability hearing.

Judgment reversed and cause remanded.

**WINKLER** and **SUNDERMANN, JJ.,** concur.

J. HOWARD SUNDERMANN, JR., retired, from the First Appellate District, sitting by assignment.


Please note:

    The court has recorded its own entry this date.